## Commonwealth v. Smith.

(Decided February 26, 1915.)

### Appeal from Warren Circuit Court.

1. **Constitutional Law—Police Power—When Available.**—The police power of a State may be called into play only when it is necessary to protect the public health or public morals or public safety; with the conduct of a private individual which he keeps to himself, and which does not operate to the detriment of others, the state as such has no concern.

2. **Constitutional Law—Act Prohibiting Possession of Liquor in Local Option Territory Elsewhere Than Private Residence of Owner—Acts, 1914, Ch. 7.**—Section 4 of "An Act prohibiting the shipment of liquors for sale in local option territory and prohibiting persons from having in possession for sale liquors in such territory" (Acts, 1914, C. 7, p. 25), providing that in prohibited territory it shall be unlawful for any person to "keep, store or possess any such liquors in any room, building or structure other than

the private residence of such person," held unconstitutional, as exceeding the authority of the legislature by prohibiting the possession of liquors for an innocent purpose with which the police power of the State is not concerned.

G. DUNCAN MILLIKEN, JAMES GARNETT, Attorney General, and CHAS. H. MORRIS, Assistant Attorney General, for appellant.

T. W. & R. C. P. THOMAS for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

At the 1914 session the General Assembly passed an act entitled "An Act prohibiting the shipment of liquors for sale in local option territory and prohibiting persons from having in possession for sale liquors in such territory." Acts 1914, Chapter 7, page 25. The act was approved March 9, 1914.

Section 1 makes the payment by any person in prohibited territory of the United States internal revenue tax permitting the sale of intoxicating liquors an intent to violate the prohibitory law, and makes it unlawful for any such person to buy, bargain for, accept, receive, hold or possess intoxicating liquors.

Section 2 makes it unlawful for any person to consign, ship, or transport intoxicating liquors to any person in prohibited territory, or for any person residing in such territory to receive such liquors, unless the packages containing the same shall be marked and labeled in a certain manner.

Section 3 requires railroads, express or other transportation companies doing business in the State to keep certain records of the transportation and delivery of all intoxicating liquors in prohibited territory.

Section 4 is as follows:

"In any county, district, precinct, town or city in this State where the sale of any of the liquors mentioned in Section 1 is prohibited, it shall be unlawful for any person to keep, store or possess any such liquors in any room, building or structure other than the private residence of such person, and which is not used as a place of public resort: Provided, That none of the provisions of this section shall apply to druggists authorized to sell such liquors, nor to persons possessing such liquors for medicinal, mechanical, chemical, scientific or sacramental purposes, nor apply to such liquors in the process of

transportation or in the possession of a common carrier, nor any wholesale dealer in, or brewer, or distiller engaged in the manufacture of such liquors in said prohibition territory.''

Section 5 provides that all liquors consigned, shipped, transported in any manner, received, held or possessed contrary to the provisions of this act, shall be deemed contraband.

Section 6 defines the word ''person'' as used in the act.

Section 7 prescribes certain penalties for violation of the act.

Section 8 repeals all acts inconsistent with the provisions of the act.

Defendant, Harry Smith, was charged with a violation of Section 4 of the act, and was fined by the county court. On appeal to the circuit court Section 4 of the act was held unconstitutional and the defendant discharged. The commonwealth appeals.

The facts on which the prosecution is based are admitted and are, in brief, as follows:

Between the first and ninth days of June, 1914, Harry Smith and three of his friends arranged to go camping. They made up a fund to purchase beer for the trip. The beer was ordered from the City Bottling Works of New Albany, Indiana, with directions to consign it to defendant. The beer arrived on June 11, 1914. The expenses incident to the purchase and transportation of the beer were paid by Smith and his three friends. When the beer was received it was carried to a room in the rear of the office of a local physician, and in the latter's control, and placed there with his consent. The fishing trip was abandoned, and the parties proceeded to drink and invite some of their friends to drink the beer. The last few remaining bottles were drunk on June 16th, after the act above set out went into effect. No part of the beer was taken from the room where it was placed. No person became intoxicated from drinking any of the beer, and no person other than Smith and his three friends contributed any portion of the expense incurred in purchasing the beer or in its preparation for use.

It will be observed that Section 4 of the act in question makes it unlawful for any person to keep, store or possess intoxicating liquors in any room, building or structure other than the private residence of such per-

son, which is not used as a place of public resort, in prohibited territory. In view of the evident purpose of the Legislature, as expressed in the title to the act, it is insisted that the words "for sale" should be interpolated in Section 4, and the act construed so as to prohibit the possession for sale of intoxicating liquors in any room, building or structure other than the private residence of the person possessing them. It is also argued that where an act is susceptible of two constructions, one of which will render the statute unconstitutional, and the other constitutional, that construction which sustains the constitutionality of the act should be adopted. It must be remembered, however, that we already have in force a statute making the possession of intoxicating liquors for the purpose of sale in local option territory unlawful. In view of this fact, and of the further fact that if the words "for sale" are interpolated in Section 4, the necessary effect of that section will be to give persons the right to keep intoxicating liquors at their private residences for the purpose of sale in prohibited territory, we conclude that the section in question is not susceptible of such a construction, but that the Legislature intended to make the possession of intoxicating liquors in prohibited territory at any other place than the private residence of the person possessing the same unlawful, irrespective of any purpose or intention to sell the same.

In view of this conclusion, it is necessary to determine whether or not, under our Constitution, the Legislature has this power. For the Commonwealth it is insisted that the act is aimed at the bootlegger, who generally hides or secretes intoxicating liquors at places other than his own residence, and in order to prevent sales by the bootlegger it is within the police power of the Legislature to make unlawful the possession in prohibited territory of intoxicating liquors at places other than the private residence of the person owning the same. On the other hand, it is insisted for the defendant that, under our Constitution, the police power of the General Assembly is somewhat restricted, and that the broad power of prohibiting or limiting the place of possession does not exist unless the possession is for an unlawful purpose. A question very similar to the one here involved was before this court in the case of Commonwealth v. Campbell, 133 Ky., 50, 117 S. W., 383, 24 L. R. A. (N. S.), 172. There the city of Nicholasville, where

local option prevailed, enacted an ordinance making it unlawful for any person to deliver or distribute in the town of Nicholasville any intoxicating liquors, provided, however, that any person might bring into the town on his person and as his personal baggage and for his own use such liquors in quantities not exceeding one quart. The ordinance was held unconstitutional on the ground that the police power did not extend to the deprivation of a citizen of his right to have intoxicating liquors in his possession for his own use, and on the further ground that our Constitution deprives the Legislature of the power of forbidding citizens to have such liquors in their possession for their own use. In discussing this question the court said:

"Now, can it be contended with any show of reason that the framers of the Constitution intended to leave the question of the retailing of liquor in a given district to a vote of the majority of the qualified voters in the district, and yet leave it in the power of the Legislature upon its own motion to prohibit the possession of liquor by the citizen? Before the present Constitution it was competent for the Legislature to prohibit the sale of liquor by retail in any county, town or district without any vote being taken by the citizens, or without giving them any voice in the matter; but no one doubts that, under the present Constitution, it is not competent for the Legislature, without a vote of the citizens, to declare the retailing of liquor in any part of the State unlawful. How vain it would be, then, for the framers of the Constitution to thus take from the Legislature the power to regulate the retailing of liquor and place that question within the competency of the qualified voters, and yet leave within the competency of the Legislature the greater power of prohibiting the citizen either from possessing liquor or using it for his own benefit or comfort. It is self-evident that, if the Legislature may pass a general law prohibiting any citizen from possessing or using liquor in any quantity, this would in itself be the most perfect prohibition law possible, because no man could retail liquor without first having possession of it. We cannot believe that the framers of the Constitution intended to thus carefully take from the Legislature the power to regulate the sale of liquor, and at the same time leave with that department of the State government the greater power of prohibiting the possession or ownership

of liquor. The fact that the Constitution, by Section 154, leaves with the General Assembly the power of restricting or prohibiting the sale or gift of liquor on election days, clearly shows that the convention had it in mind that but for this special power the Legislature could not even regulate the sale of liquor on election days. The history of our State from its beginning shows that there was never even the claim of a right on the part of the Legislature to interfere with the citizen using liquor for his own comfort, provided that in so doing he committed no offense against public decency by being intoxicated; and we are of opinion that it never has been within the competency of the Legislature to so restrict the liberty of the citizen, and certainly not since the adoption of the present Constitution.''

The opinion concludes as follows:

''The right to use liquor for one's own comfort, if the use is without direct injury to the public, is one of the citizen's natural and inalienable rights, guaranteed to him by the Constitution, and cannot be abridged as long as the absolute power of a majority is limited by our present Constitution. The theory of our government is to allow the largest liberty to the individual commensurate with the public safety, or, as it has been otherwise expressed, that government is best which governs the least. Under our institutions there is no room for that inquisitorial and protective spirit which seeks to regulate the conduct of men in matters in themselves indifferent, and to make them conform to a standard, not of their own choosing, but the choosing of the law-giver; that inquisitorial and protective spirit which seeks to prescribe what a man shall eat and wear, or drink or think, thus crushing out individuality and insuring Chinese inertia by the enforcement of the use of the Chinese shoe in the matter of the private conduct of mankind.''

Black, in his work on Intoxicating Liquors, p. 50, says:

''But it is justly held that a provision in such a law that no person without a state license shall 'keep in his possession, for another, spirituous liquors,' is unconstitutional and void. 'The keeping of liquors in his possession by a person, whether for himself or for another, unless he does so for the illegal sale of it, or for some other improper purpose, can by no possibility injure or affect the health, morals, or safety of the public, and,

therefore, the statute prohibiting such keeping in possession is not a legitimate exertion of the police power. It is an abridgment of the privileges and immunities of the citizen without any legal justification, and, therefore, void."

In Freund on Police Power, Sections 453, 454, quoting from an article on Personal Liberty in the Cyclopaedia of Temperance and Prohibition, we find the following:

"Even the advocates of prohibition concede that the State has no concern with the private use of liquor. The opponents of prohibition mistake the case by saying that the State has no right to declare what a man shall eat or drink. The State does not venture to make any such declaration. * * * It is not the private appetite or home customs of the citizen that the State undertakes to manage, but the liquor traffic. * * * If, by abolishing the saloon, the State makes it difficult for men to gratify their private appetites, there is no just reason for complaint. * * * It is, therefore, significant that the policy of prohibition stops short of dealing with the private act of consumption."

In Ex Parte Brown, 38 Tex. Crim. R., 295, 70 A. S. R., 743, 42 S. W., 554, it was held that the keeping of liquors in one's possession, whether for himself or another, unless intended for illegal sale or for some other improper purpose, can by no possibility injure or affect the health, morals or safety of the public, and, therefore, a statute prohibiting the keeping of such liquors in one's possession is not a legitimate exercise of the police power, but an abridgment of the privileges and immunities of the citizen without any legal justification.

In the case of State v. Gilmore, 33 W. Va., 146, 6 L. R. A., 847, 10 S. E., 283, a statute prohibiting a citizen from having in his possession for another intoxicating liquors was held unconstitutional. The decision was predicated on the principle that every person has a right to keep or use liquor for his own benefit or to keep it for another, provided he does not attempt to sell it or otherwise use it so as to injure the public. In the case of State v. Williams, 146 N. C., 618, 17 L. R. A. (N. S.), 299, 61 S. E., 61, 14 A. & E. Ann. Cas., 562, a statute prohibiting the carrying of more than a half gallon of intoxicating liquor into prohibited territory in any one day was held void, on the ground that it deprived such

person of his constitutional property right in case he had no intention to sell the liquor. To the same effect are the following cases: Eidge v. Bessemer (Ala.), 51 So., 246, 26 L. R. A. (N. S.), 394; Titsworth v. State (Okla. Crim. R.), 101 Pac., 288; Henderson v. Heyward, 109 Ga., 373, 47 L. R. A., 366, 77 A. S. R., 384; 34 S. E., 590; Sullivan v. Oneida, 61 Ill., 242.

The power of a State to regulate and control the conduct of a private individual is confined to those cases where his conduct injuriously affects others. With his faults or weaknesses which he keeps to himself, and which do not operate to the detriment of others, the State as such has no concern. In other words, the police power may be called into play when it is reasonably necessary to protect the public health or public morals or public safety. The mere fact that the Legislature sees fit to enact a statute ostensibly for the purpose of promoting such ends is not conclusive of the question. When, therefore, the statute purporting to have been enacted to protect the public health or public morals or public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the court so to adjudge, and thereby give effect to the Constitution. State v. Williams, *supra;* Mugler v. Kansas, 123 U. S., 623, 31 L. Ed., 205. We have in force a statute prohibiting the possession of intoxicating liquor in prohibited territory for the purpose of sale. Under this statute very slight evidence is sufficient to secure a conviction. Where, therefore, the purpose of the owner is unlawful, the above statute is effective. Here it is sought to go one step further and make the possession for an innocent purpose considered from the standpoint of the police power as much of an offense as if the possession were for an unlawful purpose. Manifestly, if the Legislature has the power to prohibit such possession at places other than one's private residence, then it has the like power to prohibit such possession even at a private residence, and this is exactly what was held in Commonwealth v. Campbell, *supra,* could not be done. There must of necessity be limits beyond which the Legislature cannot rightfully go. We think that limit is reached when it prohibits such possession for sale or other unlawful purpose. It cannot go further and prohibit such possession or limit the place of possession where the liquors

are intended for one's own use, and, therefore, for a purpose with which the police power of the State is not concerned. It will not do to say that because some persons may evade the law as it now exists others who have no intention of violating the law should be denied their constitutional rights. As this is the effect of Section 4 of the act in question, we concur in the ruling of the circuit judge that the section is unconstitutional and void.

Judgment affirmed. Whole court sitting.