(December 30, 1922.)

## STATE, Respondent, v. RAYMOND MOORE, Appellant.

[212 Pac. 349.]

INTOXICATING LIQUORS — POSSESSION—VOLSTEAD ACT—CONSTITUTIONAL
LAW—LEGISLATIVE POWER—CRIMINAL LAW—INFORMATION—DEMUR-
RER.

1. The law of this state forbidding the possession of intoxicat-
ing liquors in one's private dwelling as well as elsewhere is not in
conflict with the Volstead Act.

2. Section 26 of article 3 of the state constitution, prohibiting
the manufacture, sale, keeping for sale and transportation for sale
of intoxicating liquors for beverage purposes, is not a limitation
upon the power of the legislature in the matter of prohibition and
did not repeal the statutes of this state prohibiting the possession
of intoxicating liquors.

3. The information in this case held to be sufficient.

APPEAL from the District Court of the Third Judicial
District, for Ada County. Hon. Chas. F. Reddoch, Judge.

Appellant was convicted of the crime of possession of in-
toxicating liquors. *Affirmed.*

Paine & Snow, for Appellant.

The Volstead Act is the supreme law of the land. (*Rhode
Island v. Palmer*, 253 U. S. 350, 40 Sup. Ct. 486, 64 L. ed.
946; art. 6, U. S. Const.; 33 Federalist (Lodge), 192; *Gib-
bons v. Ogden*, 22 U. S. (9 Wheat.) 1, 210, 6 L. ed. 23;
*Northern Securities Co. v. United States*, 193 U. S. 197, 347,
24 Sup. Ct. 436, 461, 48 L. ed. 679; *Christian Feigenspan,
Inc., v. Bodine*, 264 Fed. 186.)

Publisher's Note.

2. Federal constitutional or legislative provisions as to intoxicating
liquors as affecting state legislation, see notes in 10 A. L. R. 1587; 11
A. L. R. 1320.

The description of the offense charged in the information is too general, indefinite and uncertain. (*State v. London,* 99 Or. 189, 195 Pac. 344.)

Sec. 33 of the Volstead Act is a valid exercise of the power conferred upon Congress by the 18th amendment. (*Ruppert v. Caffey,* 251 U. S. 264, 40 Sup. Ct. 141, 64 L. ed. 260; *Hoke v. United States,* 227 U. S. 308, 33 Sup. Ct. 281, 57 L. ed. 523; *Purity Extract & T. Co. v. Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, 57 L. ed. 184; *Crane v. Campbell,* 245 U. S. 304, 38 Sup. Ct. 98, 62 L. ed. 304; *Street v. Lincoln Safe Deposit Co.,* 254 U. S. 88, 10 A. L. R. 1548, 41 Sup. Ct. 31, 65 L. ed. 151, 267 Fed. 706; *United States v. Murphy,* 264 Fed. 842.)

Since the effective date of the 23d amendment to the state constitution, legislation prohibiting the possession of liquor in the home for personal use and with no intent to sell the liquor is invalid. (*Rhode Island v. Palmer,* 253 U. S. 350, 40 Sup. Ct. 486, 64 L. ed. 946; Bishop, Stat. Crimes, sec. 1054; *People v. Comptroller,* 152 N. Y. 399, 36 N. E. 852; *State v. Gilman,* 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847; *Commonwealth v. Campbell,* 133 Ky. 50, 117 S. W. 383, 24 L. R. A., N. S., 172; *State ex rel. Francis v. Moran,* 76 Fla. 304, 2 A. L. R. 1068, 79 So. 753; Joyce on Intoxicating Liquors, sec. 79; *Gherna v. State,* 16 Ariz. 344, 146 Pac. 494; *Ex parte Brown,* 38 Tex. Cr. 295, 42 S. W. 554; *Morris v. Wrightson,* 56 N. J. L. 201, 28 Atl. 56, 22 L. R. A. 548; *Matter of N. Y. Elevated R. R. Co.,* 70 N. Y. 327; *Rodman v. Munson,* 13 Barb. (N. Y.) 188; *Page v. Allen,* 58 Pa. 338, 98 Am. Dec. 272; *State v. Tucson Gas. Co.,* 15 Ariz. 294, 138 Pac. 781; *Wilcox v. Edwards,* 162 Cal. 455, 123 Pac. 276; secs. 1, 21, art. 1, and sec. 26, art. 3, Idaho Const.)

The 18th amendment extends the federal power to the intrastate possession of intoxicating liquors for beverage purposes and does not prohibit the possession or consumption of such liquors, and privileges and immunities duly conferred by Congress upon citizens of the United States to possess and consume intoxicating liquors, unconnected with the sale, manufacture, transportation, importation and exportation

thereof for beverage purposes, are protected by the 14th amendment from abridgment by state laws. (*Hall v. Moran,* 81 Fla. 706, 89 So. 104; *Burrows v. Moran,* 81 Fla. 662, 89 So. 111; *Johnson v. State,* 81 Fla. 783, 89 So. 114; *Haile v. Gardner,* 82 Fla. 355, 91 So. 376.)

Roy L. Black, Attorney General, and James L. Boone, Assistant, for Respondent.

The state may prohibit the mere possession of intoxicating liquors. (*In re Crane,* 27 Ida. 671, 151 Pac. 1006, L. R. A. 1918A, 942; *Crane v. Campbell,* 245 U. S. 304, 38 Sup. Ct. 98, 62 L. ed. 304.)

A constitutional provision such as sec. 26, art. 4, of the constitution of the state, does not limit or abridge the power of the legislature to prohibit the traffic in intoxicating liquors. (*State v. Durein,* 70 Kan. 13, 80 Pac. 987, 15 L. R. A., N. S., 908; *State v. Weiss,* 84 Kan. 165, 113 Pac. 338, 36 L. R. A., N. S., 73; *State v. Kane,* 15 R. I. 395, 6 Atl. 783; *State v. Brown,* 40 S. D. 372, 167 N. W. 400; *Fitch v. State,* 102 Neb. 361, 167 N. W. 417; *Schwartz v. People,* 47 Colo. 483, 104 Pac. 92; *Alexander v. People,* 7 Colo. 155, 2 Pac. 894; *Galovich v. People,* 68 Colo. 299, 189 Pac. 34; *Morasso v. Van Pelt,* 77 Fla. 432, 81 So. 529; *Lakes v. Goodloe* (Ky.), 242 S. W. 632.)

Congress has no general power to enact police regulations within the limits of the state except in interstate commerce. (*United States v. DeWitt,* 9 Wall. 41, 19 L. ed. 593; *United States v. Reese,* 92 U. S. 214, 23 L. ed. 563; *United States v. Cruikshank,* 92 U. S. 542, 23 L. ed. 588.)

No power is conferred by the constitution upon Congress to establish mere police regulations within the state. (*United States v. DeWitt, supra.*)

Prior to the adoption of the amendment and the War Prohibition Act, the entire subject of intoxicating liquors, including total or partial prohibition of the manufacture, transportation and sale, and the possession thereof, and the regulation thereof, apart from interstate commerce, was

vested in this state as a part of its police power. (*Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205; *Re Rahrer,* 140 U. S. 545, 11 Sup. Ct. 865, 35 L. ed. 572; *South Carolina v. United States,* 199 U. S. 437, 453, 4 Ann. Cas. 737, 26 Sup. Ct. 110, 50 L. ed. 261; *Crane v. Campbell,* 245 U. S. 304, 38 Sup. Ct. 98, 62 L. ed. 304.)

The 18th amendment to the constitution of the United States invalidated only those legislative acts of a state which authorized or sanctioned what the 18th amendment prohibited. (*Rhode Island v. Palmer,* 253 U. S. 350, 40 Sup. Ct. 486, 64 L. ed. 946; *Pennsylvania v. Vigliotti,* U. S. Sup. Ct. Adv. Op. No. 13, Aug. 15, 1922, p. 389.)

The 18th amendment preserves inviolate laws of the state consistent with its provisions. (*United States v. Peterson,* 268 Fed. 864.)

The granting of concurrent power to enforce under the second section of the 18th amendment does not deprive the states of power to enforce prohibition within their own spheres of action. (*Rhode Island v. Palmer, supra; Pennsylvania v. Vigliotti, supra; Commonwealth v. Nickerson,* 236 Mass. 281, 10 A. L. R. 1568, 128 N. E. 273; *State v. District Court,* 58 Mont. 684, 194 Pac. 308; *Jones v. Hicks,* 150 Ga. 657, 104 S. E. 771; *United States v. Peterson, supra; Ex parte Volpi* (Cal. App.), 119 Pac. 1090; *United States v. Lanza et al.,* —— U. S. ——, 43 Sup. Ct. 141, 67 L. ed. ——.)

Under the 18th amendment, the states are not limited in promulgating and enforcing effective independent legislation so long as the same is put forth in aid of enforcement, and not for the obstruction of the dominant purposes of the 18th amendment. (*State v. Nickerson, supra; State v. District Court, supra; United States v. Peterson, supra; Commonwealth v. Vigliotti,* 271 Pa. St. 10, 115 Atl. 22; *Merryweather v. State,* 125 Miss. 435, 87 So. 411; *Woods v. City of Seattle* (D. C.), 270 Fed. 316; *Powell v. State,* 18 Ala. App. 101, 90 So. 138.)

It should never be held that Congress intends to supersede, or by its legislation suspend, the exercise of the police powers

of the state, unless its purpose to effect that result is clearly manifested. (*Sinnot v. Davenport,* 22 How. 227, 243, 16 L. ed. 243; *Reid v. Colorado,* 187 U. S. 148, 23 Sup. Ct. 96, 47 L. ed. 114.)

Idaho's statutes are effective independent legislation aiding in the enforcement of prohibition. (*Crane v. Campbell, supra.*)

There is no irreconcilable conflict between an act of Congress and the statute under the 18th amendment unless the statute permits what the 18th amendment or national Prohibition Act prohibits, or tends to liberalize the prohibitions of either. (*State v. Nickerson, supra; State v. District Court, supra; United States v. Peterson, supra; Commonwealth v. Vigliotti, supra; Merryweather v. State, supra; Woods v. City of Seattle* (D. C.), 270 Fed. 316; *Powell v. State,* 18 Ala. App. 101, 90 So. 138.)

The information in this case is sufficient. (*State v. Petrogalli,* 34 Ida. 232, 200 Pac. 119.)

DUNN, J.—Appellant was charged by the prosecuting attorney of Ada county with wilfully and unlawfully having in his possession intoxicating liquor, the charging part of the information reading as follows:

"That the said Raymond Moore, on or about the 27th day of February, 1921, at Boise, in the County of Ada, State of Idaho, then and there being, did then and there wilfully and unlawfully have in his possession intoxicating liquor."

Appellant demurred to the information on numerous grounds and his demurrer was overruled.

The following stipulations were entered into by the prosecuting attorney on behalf of the state and by counsel for appellant on his behalf:

"It is hereby stipulated and agreed by and between the State of Idaho, Plaintiff, represented by Elbert S. Delana, Prosecuting Attorney, and Raymond Moore, defendant, represented by Karl Paine and Edwin Snow, Esqs., that the intoxicating liquor referred to in the Information filed herein was on the date alleged in said Information possessed by de-

fendant in his private dwelling while the same was occupied and used by him as his dwelling only, and was for use only for personal consumption of the owner thereof, and his family residing in such dwelling and of his *bona fide* guests when entertained by him therein.

"It being intended hereby to stipulate and agree, and it is hereby stipulated and agreed, that defendant's possession of said liquor was, at the time and place referred to in the information, permitted by and lawful under the provisions of Section 33 of the Act of Congress of October 28, 1919, known as the Volstead Act.

"It is intended hereby to present squarely for decision the proposition of whether the defendant may be convicted of an offense against the State law, notwithstanding the said provisions of the Volstead Law, the defendant not waiving, but expressly reserving hereby, the right to urge the other questions raised by his demurrer on file herein."

"It is stipulated and agreed by and between counsel for the respective parties to the above entitled action that a jury be and the same is hereby waived and that the court shall, in lieu of a jury, return a verdict herein, and that such verdict shall have the force and effect of a verdict of a jury for all purposes; and that the stipulation of facts herein shall be certified by the Reporter and settled by the court as a Reporter's transcript and deemed to be a Reporter's transcript for all purposes both in this court and on appeal."

The case was submitted to the court in accordance with the foregoing stipulations and the following verdict was found:

"This cause having been submitted upon stipulations of the respective parties, the court therefrom finds the defendant Raymond Moore guilty as charged in the information."

Judgment was rendered pursuant to said verdict imposing on appellant 30 days' imprisonment in the county jail and a fine of $50. The appeal is from said judgment.

Appellant assigns 10 errors, which it will not be necessary to discuss separately. The fifth assignment, which he says "presents the question of chief concern," involves his con-

tention that the Volstead Act affords him a complete defense. We think all of the contentions of counsel for appellant may be summarized in these three propositions: First, that by sec. 33 of the Volstead Act Congress intended to and did guarantee to every citizen the right, irrevocable so far as the states are concerned, to have liquors in his private dwelling in accordance with the provisions of said section; second, that by the Volstead Act Congress intended to and did establish a national policy with regard to intoxicating liquors beyond which state laws may not go in the direction of prohibition; third, that by the adoption of sec. 26 of article 3 of the state constitution this state adopted a policy with regard to intoxicating liquors beyond which the legislature may not go in the matter of prohibition, and that thereby the so-called "bone-dry" law was repealed.

Section 33 of the Volstead Act reads as follows:

"After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner within ten days after the date when the eighteenth amendment of the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his *bona fide* guests when entertained by him therein, and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

Appellant relies on the last sentence of this section as a guaranty by Congress that the state may not deprive him of his right to have liquors in his private dwelling under the

conditions there set out. It is stipulated that his possession of the liquors involved in this case was in accordance with this section.

It is clear that if the interpretation of sec. 33 contended for by appellant is approved the judgment in this case cannot stand, but we think this interpretation cannot be sustained, though ultimately this question is one that must be determined by the supreme court of the United States.

At the outset it will be well to have in mind that Congress has only such powers as have been granted by the constitution of the United States. More than 100 years ago in the case of *Martin v. Hunter's Lessee,* 1 Wheat. 304, 4 L. ed. 97, 102, the supreme court of the United States, in an opinion by Justice Story, concurred in by Chief Justice Marshall, said:

"The constitution of the United States was ordained and established, not by the states in their sovereign capacities, but emphatically, as the preamble of the constitution declares, by 'the people of the United States.' There can be no doubt that it was competent to the people to invest the general government with all the powers which they might deem proper and necessary; to extend or restrain these powers according to their own good pleasure, and to give them a paramount and supreme authority. As little doubt can there be that the people had a right to prohibit to the states the exercise of any powers which were, in their judgment, incompatible with the objects of the general compact; to make the powers of the state governments, in given cases, subordinate to those of the nation, or to reserve to themselves those sovereign authorities which they might not choose to delegate to either. The constitution was not, therefore, necessarily carved out of existing state sovereignties, nor a surrender of powers already existing in state institutions, for the powers of the states depend upon their own constitutions; and the people of every state had the right to modify and restrain them, according to their own views of policy or principle. On the other hand, it is perfectly clear that the sovereign

powers vested in the state governments, by their respective constitutions, remained unaltered and unimpaired, except so far as they were granted to the government of the United States.

"These deductions do not rest upon general reasoning, plain and obvious as they seem to be. They have been positively recognized by one of the articles in amendment of the constitution, which declares, that 'the powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.'

"The government, then, of the United States, can claim no powers which are not granted to it by the constitution, and the powers actually granted, must be such as are expressly given, or given by necessary implication."

Later in the case of *Gibbons v. Ogden,* 9 Wheat. 1, 6 L. ed. 23, 68, the same court, in an opinion by Chief Justice Marshall, speaking of the constitution of the United States, said:

"This instrument contains an enumeration of powers expressly granted by the people to their government. . . . . . If from the imperfection of human language there should be serious doubts respecting the extent of any given power, it is a well settled rule that the objects for which it was given, especially when those objects are expressed in the instrument itself, should have great influence in the construction."

The things prohibited are clearly set out in the eighteenth amendment, and the power of Congress to enforce it, and no other power, is expressly conferred by the amendment. The eighteenth amendment to the constitution of the United States, whose provisions are involved in this case, reads as follows:

"§ 1. After one year from the ratification of this article the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"§ 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation."

Before the adoption of said amendment as a part of the constitution of the United States the sole power to deal with intrastate prohibition of the manufacture and sale of intoxicating liquors was vested in the states. Whatever limited power Congress had to deal with the question was incidental to the exercise of powers conferred upon it by the constitution of the United States. (*Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205; *Crane v. Campbell,* 245 U. S. 304, 38 Sup. Ct. 98, 62 L. ed. 304; *United States v. Lanza,* —— U. S. ——, 43 Sup. Ct. 141, 67 L. ed. ——.) In other words, the police power which was exercised by the states in dealing with intoxicating liquors was not shared by Congress. In the exercise of this plenary power the states could permit the manufacture and sale of intoxicating liquors without any restrictions whatever, or they could license such manufacture and sale, or they could absolutely prohibit it. All the power that Congress has now to enforce prohibition is derived from the eighteenth amendment above quoted, and it has been held by the supreme court of the United States that, "The second section of the amendment—the one declaring 'the Congress and the several States shall have concurrent power to enforce this article by appropriate legislation'—does not enable Congress or the several states to defeat or thwart the prohibition, but only to enforce it by appropriate means." (*Rhode Island v. Palmer,* 253 U. S. 387, 41 Sup. Ct. 486, 65 L. ed. 978.)

When we consider the Volstead Act in its entirety and particularly that provision of sec. 3 which says that "All the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented," and the construction that the supreme court of the United States has placed upon the power of Congress in connection with the enforcement of the eighteenth amendment, it seems perfectly clear that that part of sec. 33 relied upon by appellant as a defense in this case was not intended

by Congress as a limitation upon the power of the states to deny the citizen the right to possess liquors, but was intended merely to indicate that it was not the intention of Congress, whatever may have been its power in the premises, that the Volstead Act should be construed to deny the right of one to have liquor in his private dwelling under the conditions therein stated. If it had been intended by Congress to enact a provision having the purposes contended for by appellant it would undoubtedly have made that purpose plain by saying that no state should make or enforce such a law.

Aside from this interpretation being unwarranted by the language used by Congress and contrary to the plain purpose of the Volstead Act, the position taken by appellant meets this difficulty: If the interpretation of sec. 33 of the Volstead Act contended for by appellant is sustained, then through that section Congress is able to compel the states, in violation of their own laws, to permit persons to have in their private dwellings within such states unlimited stocks of liquors. It is common knowledge that the law prohibiting the possession of intoxicating liquors in one's dwelling as well as elsewhere greatly aids the enforcement of prohibition, and it needs no argument to show that the nullifying of this law by Congress would not only not aid in the enforcement of prohibition, but would tend strongly to defeat or thwart such enforcement, which the supreme court says neither Congress nor the several states may do. (*Rhode Island v. Palmer, supra.*)

Another difficulty with the interpretation sought by appellant is this: Congress having no prior control over the police power of the states, its sole power to legislate with regard to the liquor traffic within the states is derived from the eighteenth amendment, but in that amendment is found no suggestion, either express or implied, that Congress in the exercise of the power conferred thereby may interfere with the police power of any state. (*United States v. De-Witt*, 9 Wall. 41, 19 L. ed. 593; *United States v. Reese*, 92 U. S. 214, 23 L. ed. 563; *United States v. Cruikshank*, 92

U. S. 542, 23 L. ed. 588.) The power of the several states over the liquor traffic within their respective borders before the adoption of the eighteenth amendment was plenary, as has been already pointed out. By the adoption of that amendment they lost no power to deal with the subject of intoxicating liquors except the power to license and regulate. (*Vigliotti v. Com. of Pennsylvania,* 258 U. S. 403, 42 Sup. Ct. 330, 66 L. ed. 686; *Commonwealth v. Vigliotti,* 271 Pa. St. 10, 115 Atl. 22; *People v. Nickerson,* 236 Mass. 281, 10 A. L. R. 1568, 128 N. E. 273; *State v. District Court,* 58 Mont. 684, 194 Pac. 308; *United States v. Peterson,* 268 Fed. 864; *Ex parte Volpi,* 53 Cal. App. 229, 199 Pac. 1090; *Jones v. Hicks,* 150 Ga. 657, 11 A. L. R. 1315, 104 S. E. 771.)

In the case of *Reid v. Colorado,* 187 U. S. 137, 23 Sup. Ct. 92, 47 L. ed. 108, 114, the supreme court of the United States said: "It should never be held that Congress intends to supersede, or by its legislation suspend, the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested," quoting from *Sinnott v. Davenport,* 22 How. 227, 243, 16 L. ed. 243, 274, in which the same court said: "We agree, that in the application of this principle of supremacy of an act of Congress in a case where the state law is but an exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together; and also that the act of Congress should have been passed in the exercise of a clear power under the constitution."

In the case at bar there is no repugnance or conflict so direct and positive that the two acts cannot be reconciled or consistently stand together. There is no manifestation of a purpose such as appellant contends for in the act of Congress. There is a total lack of power to effect such purpose, even if the purpose to do so were manifest. It is perfectly clear that there is no repugnance or conflict, direct or indirect, between the two acts, for if the law of this state forbidding the possession of intoxicating liquors should be

effectively and completely enforced it would just as effectively and completely enforce the eighteenth amendment forbidding the manufacture, sale or transportation of liquor for beverage purposes. It therefore falls outside of those laws described in *Rhode Island v. Palmer, supra,* as invalidated by the eighteenth amendment as follows: "The first section of the amendment—the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers, and individuals within those limits, and of its own force invalidates every legislative act—whether by Congress, by a state legislature, or by a territorial assembly—which authorizes or sanctions what the section prohibits."

The view that the law of Idaho against the possession of intoxicating liquors is not in conflict with the eighteenth amendment is supported also by another recent decision of the supreme court of the United States.

The state of Pennsylvania has what is known as the Brooks law, enacted before the adoption of the 18th amendment. Under this law one Vigliotti was found guilty of selling, during the spring of 1920, spirituous liquor without a license. The offense having been committed after the eighteenth amendment became effective, the defendant claimed that the Volstead Act was the only law applicable to the sale of intoxicating liquors. The supreme court of Pennsylvania affirmed the judgment of conviction and the case went to the supreme court of the United States on a writ of error. In an opinion by Justice Brandeis that court affirmed the state court and said: "The Brooks Law, as construed by the courts of the state, prohibits every sale of spirituous liquor without a license, excepting only such sales as are made by druggists, and these are forbidden to sell intoxicating liquors except on prescription of a regular physician. The law applies, however small the percentage of alcohol, and although the liquor is not intoxicating. It applies to liquor sold solely for industrial uses. It does not purport to confer upon any one anywhere the right to a license, nor does it authorize the sale of liquor in any city

36 Idaho.—37

or county having a special prohibitory law. It merely grants to the appropriate officials, where such authority exists, discretion to give or to withhold the license under the conditions prescribed. In case of an indictment for selling without a license, a sale is presumed to be unlawful, and the burden is on the defendant to show the authority on which he acted. It is thus primarily a prohibitory law, and its prohibitory features are not so dependent upon those respecting license as to be swept away by the Eighteenth Amendment and the Volstead Act. The supreme court declared further that:

" 'The Brooks Law still survives as Pennsylvania's own police power method of officially listing and adequately controlling the customary sources of general supply and distribution, to the peoples within her borders, of those kinds of liquors among which intoxicating beverages are usually found, and she may thus assist in prohibiting their illegal use as such.' 271 Pa. St. 10, 115 Atl. 22.

"We, of course, accept as controlling the construction given to the statute by the highest court of the state. The question before us is whether, so construed, the statute violates the federal Constitution.

"The Brooks Law as thus construed does not purport to authorize or sanction anything which the Eighteenth Amendment or the Volstead Act prohibits. And there is nothing in it which conflicts with any provision of either. It is merely an additional instrument which the state supplies in the effort to make prohibition effective. That the state may by appropriate legislation exercise its police power to that end was expressly provided in section 2 of the amendment which declares that 'Congress and the several states shall have concurrent power to enforce this article by appropriate legislation.' *National Prohibition Cases*, 253 U. S. 350, 387, 40 Sup. Ct. 486, 588, 64 L. ed. 946. That the Brooks Law, as construed is appropriate legislation, is likewise. To prohibit every sale of spirituous liquors, except by licensed persons, may certainly aid in preventing sales for beverage purposes of liquor containing as much

as one-half of 1 per cent. of alcohol, and that is what the Volstead Act prohibits. If the Brooks Law as construed had been enacted the day after the adoption of the amendment, it would obviously have been 'appropriate legislation.' It is not less so because it was already in existence.'' (*Vigliotti v. Com. of Pennsylvania*, 258 U. S. 403, 42 Sup. Ct. 330, 66 L. ed. 686.)

The legal principle involved in the case at bar, as to state prohibitions more severe than the eighteenth amendment, is identical with that of the Pennsylvania case. That decision affirmed the power of the state to enforce a prohibition law enacted before the eighteenth amendment became effective and more stringent than the Volstead Act. The case fully sustains the contention of the state in the case at bar.

In this contention that the Volstead Act affords him a complete defense in this case appellant relies strongly upon the case of *Hall v. Moran*, 81 Fla. 706, 89 So. 104. In that case the question involved was whether the state law limiting the right of an individual to a certain quantity of intoxicating liquor could stand in the face of that provision of the Volstead Act in question here, namely, sec. 33. The holding of the supreme court of Florida was that this provision of the Volstead Act conferred a right upon the citizen that could not be taken away by the state. It seems to us, however, that the argument of the court in support of its holding is unsound. Repeatedly in the course of its opinion, the court, speaking of the eighteenth amendment, says it ''specificially extends the federal authority to intrastate matters affecting intoxicating liquors.'' This construction of the power of Congress under the eighteenth amendment is very much broader, in our opinion, than the language of said amendment will justify. It confers no power upon Congress to legislate generally upon matters affecting intoxicating liquors. It specifically prohibits the manufacture, sale or transportation of intoxicating liquors for beverage purposes and the only power conferred upon Congress in this connection is to enforce this prohibition by appropriate

legislation. If the power as defined by the Florida court were conferred upon Congress by this amendment there might be some ground for the contention of appellant in this case; but under the amendment as we read it, and as we think the supreme court of the United States has construed it, there is no such power vested in Congress.

More than once in the same opinion the Florida court refers to the fact that the eighteenth amendment does not deny to Congress the power to enact the provision in controversy. But Congress, as we have already seen, does not derive its power to legislate upon intrastate matters from the fact that the constitution does not deny it such specific power. Congress draws no power from such a source. If the constitution, neither by express words nor by necessary implication, confers such power upon Congress then the power is lacking.

The Florida court also discusses the permission contained in sec. 33 of the Volstead Act as a privilege or immunity of which the state may not deprive the citizen without violating the fourteenth amendment. In the case of *Crane v. Campbell*, 245 U. S. 304, 38 Sup. Ct. 98, 62 L. ed. 304, the supreme court had under consideration the very statute involved in this case. In an opinion by Justice McReynolds deciding that case the court said:

"The question presented for our determination is whether the Idaho statute, in so far as it undertakes to render criminal the mere possession of whisky for personal use, conflicts with that portion of the 14th Amendment which declares: 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law.' Its validity under the state constitution is not open for our consideration; with its wisdom this court is not directly concerned.

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon

their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guaranties of the 14th Amendment. (Citing cases.)

"As the state has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. (Citing cases.) And considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose.

"We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no state may abridge. A contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase, or transportation of such articles,—the only feasible ways of getting them. An assured right of possession would necessarily imply some adequate method to obtain not subject to destruction at the will of the state."

While the 18th amendment was adopted after the decision in the case of *Crane v. Campbell,* it is not seen how that fact could alter the law as declared in that case so as to make it inapplicable to the case at bar.

It seems to us that under the authorities cited and quoted there can be no question that Congress, even if it had intended to fasten such a prohibition upon the states, was wholly without power to do so.

The foregoing position as to the right of the state to select its own means of enforcing prohibition finds strong support in the very recent case of *United States v. Vito Lanza et al.,* decided by the supreme court of the United States on December 11, 1922. In that case the defendants had been convicted under the state law of Washington of the offense of manufacturing, transporting and having in

possession certain intoxicating liquor. They pleaded these convictions as a bar to their prosecution in the United States court on indictments charging them with manufacturing, transporting and having in possession the same liquor. The United States district court for the western district of Washington sustained the plea in bar but was reversed by the supreme court, which held that since the acts charged constituted an offense against each of two sovereignties punishment might be inflicted by each, and that "a conviction by a court of Washington of the offense against that state is not a conviction of the different offense against the United States and so is not double jeopardy." In delivering the opinion of the supreme court, Chief Justice Taft used the following language, which is pertinent to the points hereinbefore discussed:.

"The Amendment was adopted for the purpose of establishing prohibition as a national policy reaching every part of the United States and affecting transactions which are essentially local or intrastate, as well as those pertaining to interstate or foreign commerce. The second section means that power to take legislative measures to make the policy effective shall exist in Congress in respect of the territorial limits of the United States and at the same time the like power of the several states within their territorial limits shall not cease to exist. Each state, as also Congress, may exercise an independent judgment in selecting and shaping measures to enforce prohibition. Such as are adopted by Congress become laws of the United States and such as are adopted by the State become laws of that State. They may vary in many particulars, including the penalties prescribed, but this is an inseparable incident of independent legislative action in distinct jurisdictions.

"To regard the Amendment as the source of the power of the States to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. Save for some restrictions arising out of the Federal Constitution, chiefly the commerce clause, each State possessed that power in full measure prior to the Amendment, and the

probable purpose of declaring a concurrent power to be in the States was to negative any possible inference that in vesting the National Government with the power of country-wide prohibition, state power would be excluded. In effect the second section of the Eighteenth Amendment put an end to restrictions upon the State's power arising out of the Federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the Amendment took from the States all power to authorize acts falling within its prohibition, but it did not cut down or displace prior state laws not inconsistent with it. Such laws derive their force, as do all new ones consistent with it, not from this Amendment, but from power originally belonging to the States, preserved to them by the Tenth Amendment, and now relieved from the restriction heretofore arising out of the Federal Constitution. This is the *ratio decidendi* of our decision in *Vigliotti v. Pennsylvania* (April 10, 1922).

"We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the Amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other." *United States v. Lanza et al.,* —— U. S. ——, 43 Sup. Ct. 141, 67 L. ed. ——.

While this decision does not expressly pass upon the contention of appellant as to sec. 33 of the Volstead Act, we see no way to uphold appellant's contention as to said section if "Each state, as also Congress, may exercise an independent judgment in selecting and shaping measures to enforce prohibition," and if "Each [sovereignty] may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the Amendment." Certainly

the state cannot exercise such independence if Congress may impose upon state legislation the restriction as to possession contended for by appellant.

With the failure of appellant's contention that sec. 33 is a guaranty of his right to have intoxicating liquor in his home which cannot be taken away by the state goes also his contention that Congress by the Volstead Act intended to and did establish a national policy with regard to intoxicating liquors, because Congress, without a grant of such power, is wholly without authority to establish any such policy. The same authorities that sustain the view we have expressed with regard to the first proposition are equally in point to sustain our view that Congress is without authority to establish the national policy contended for.

The sections of the Idaho Compiled Statutes involved in this case, enacted by the state legislature in 1915, are C. S., secs. 2606, 2621 and 2628, which forbid the possession of intoxicating liquors except under certain circumstances not material here.

At the same session of the state legislature a joint resolution was adopted submitting to the people of the state the following amendment to the constitution, which was adopted in the year 1916 and became sec. 26 of article 3 of the state constitution: "From and after the first day of May in the year 1917, the manufacture, sale, keeping for sale, and transportation for sale of intoxicating liquors for beverage purposes are forever prohibited. The legislature shall enforce this section by all needful legislation."

If by the adoption of this amendment after the enactment of the foregoing statutes against the possession of liquor the people of the state intended to declare a policy with regard to prohibition that forbade the legislature to extend such prohibition beyond "the manufacture, sale, keeping for sale, and transportation for sale of intoxicating liquors for beverage purposes," it is somewhat singular that no intimation of that intention was manifested in the amendment.

Under the constitution of this state full and complete legislative power is vested in the state legislature, except as it is restrained by the constitution itself or the federal constitution. The most casual consideration of the constitution and the respective powers vested in the co-ordinate branches of the state government and the duties of such branches toward each other would lead to the conclusion that this court should not construe a constitutional amendment as depriving the legislature of the plenary power conferred upon it by the people unless such intent were expressed in the constitutional provision or were necessarily implied from the language used. Certainly no such conclusion can be reached from the language of the amendment under consideration. (*State v. Durein,* 70 Kan. 13, 78 Pac. 152, 15 L. R. A., N. S., 908; *State v. Weiss,* 84 Kan. 165, 169, 113 Pac. 388, 36 L. R. A., N. S., 73; *State v. Kane,* 15 R. I. 395, 6 Atl. 783; *State v. Brown,* 40 S. D. 372, 167 N. W. 400; *Fitch v. State,* 102 Neb. 361, 167 N. W. 417; *Schwartz v. People,* 46 Colo. 239, 104 Pac. 92; *Alexander v. People,* 7 Colo. 155, 2 Pac. 894; *Galovich v. People,* 68 Colo. 299, 189 Pac. 34; *Morasso v. Vanpelt,* 77 Fla. 432, 81 So. 529; *Lakes v. Goodloe,* 195 Ky. 240, 242 S. W. 632; *Commonwealth v. Wells,* 196 Ky. 262, 244 S. W. 675.)

If the amendment is to be considered as declaratory of a policy by the people of Idaho that policy was that the legislature should no longer have the power to license the liquor traffic.

This action was brought for the purpose of enforcing a state statute enacted before the eighteenth amendment became effective, but one in complete harmony with the purpose of that amendment. If it is considered as the exercise by this state of the "concurrent power" to enforce the amendment, it is certainly legislation appropriate to that end. If it is considered as entirely independent of the eighteenth amendment, it is still within the police power of the state, and tends directly and strongly to enforce the eighteenth amendment. (*Vigliotti v. Com. of Pennsylvania,*

*supra; Meriweather v. State,* 125 Miss. 435, 87 So. 411; *People v. Nickerson, supra.*)

The objection to the information urged by appellant is fully answered by the case of *State v. Petrogalli,* 34 Ida. 232, 200 Pac. 119. There was no error in the court's overruling the demurrer.

The judgment of the district court is affirmed.

Rice, C. J., and Budge and McCarthy, JJ., concur.

Lee, J., concurs in the result.


(February 3, 1923.)

ON PETITION FOR REHEARING.

WILLIAM A. LEE, J. — Counsel for appellant rely chiefly for a reversal of the judgment below upon the ground that C. S., sec. 2606, upon which the prosecution is based, is in irreconcilable conflict with section 33 of the act of Congress, known as the Volstead Act, and that the federal law being the paramount law, the state statute must yield in so far as the two are in conflict.

C. S., sec. 2606, in part ·reads:

"It shall be unlawful for any person, firm, company or corporation, its officers or agents . . . . to have in his or its possession or to transport any intoxicating liquor or alcohol . . . . "

Section 33 of the Volstead Act reads:

" . . . . But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as a dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his *bona fide* guests when entertained by him."

In *Rhode Island v. Palmer,* 253 U. S. 350, 40 Sup. Ct. 486, 64 L. ed. 946, known as the *National Prohibition Cases,*

that court, as its sixth conclusion relative to the 18th amendment, said that:

"6. The first section of the Amendment—the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers and individuals within those limits, and of its own force invalidates every legislative act —whether by Congress, by a state legislature, or by a territorial assembly—which authorizes or sanctions that which the section prohibits."

The eleventh conclusion upholds the Volstead Act as appropriate legislation to enforce the 18th amendment:

"11. While recognizing that there are limits beyond which Congress cannot go in treating beverages as within its power of enforcement, we think those limits are not transcended by the provision of the Volstead Act (title II, sec. 1), wherein liquors containing as much as ½ of 1 per cent of alcohol by volume, and fit for use for beverage purposes, are treated as within that power. (*Ruppert v. Caffey*, 253 U. S. 264, 64 L. ed. 260.)"

That the state statute which prohibits even the innocuous possession of intoxicating liquors and makes such possession for any purpose a crime is in apparent conflict with said section 33 of the Volstead Act, which expressly permits possession of liquors for the purposes therein specified, seems clear. With great learning and industry counsel for appellant have endeavored to show that these two laws cannot operate at the same time in the same jurisdiction, within the same territorial limits and with reference to the same subject matter, and that the act of Congress being the paramount law, it follows that the state law must yield, in so far as it forbids the possession of intoxicating liquors, when the federal law expressly permits such possession.

If appellant's contention that section 33 of the Volstead Act is the paramount law of the land, in the sense that the permission given by this act to possess intoxicating liquors under the conditions therein prescribed, and that it prohibits the state from denying such right, be considered,

it presents a question which under section 237 of the Judiciary Act of Sept. 24, 1789, as now amended (U. S. Rev. Stats. sec. 709; U. S. Comp. Stats. Ann. 1916, sec. 1214; 5 Fed. Stats. Ann., p. 724, note), is one for the ultimate determination of the federal supreme court, and the decision of this court is merely that of an intermediate court. It therefore becomes of controlling importance to ascertain what this superior court has said with reference to the limitation which the 18th amendment has placed upon the power of the states with reference to this question.

In *United States v. Lanza et al.*, —— U. S. ——, 43 Sup. Ct. 141, 67 L. ed. ——, decided December 11, 1922, and since this cause was submitted, it is said: "In effect the second section of the 18th Amendment put an end to all restrictions upon the state's power arising out of the federal constitution, and left her free to enact prohibition laws *applying to all transactions within her limits.*"

In the application for a rehearing, counsel contend that the decision in the Lanza case has no bearing upon the question here presented for determination. The writer hereof concurred in the conclusion reached by this court upon the ground that the construction given by the federal supreme court in the Lanza case to the second section of the 18th amendment is controlling in this case, because it leaves the state free to enact prohibition laws applying to all transactions within her limits, so long as she keeps within the inhibition of the first section of this amendment, which prohibits for beverage purposes the manufacture, sale or transportation of intoxicating liquors, the importation thereof into or the exportation thereof from the United States, for I think it cannot be maintained that either the prohibition of the manufacture, sale, transportation, importation or exportation mentioned is violated by the state statute denying the right of possession. I am unable to understand how the federal supreme court could have employed more apt words than those above quoted by which to declare that the second section of the 18th amendment was intended to, and does, put an end to all restrictions upon

the state's power to enact prohibition laws applying to all transactions within her limits, so long as the state does not violate the prohibition contained in the first section of this amendment.

Doubtless there will be many who will not be able to comprehend how any system of laws can be logical, wise or beneficent where there are two statutes in force in the same territory, both of which relate to the same subject and are both designed to correct the same evil, to both of which all citizens and subjects are alike amenable, wherein the one, which because of its being an act of Congress is termed the paramount law, expressly permits that which the other expressly prohibits. Under this state of affairs it may be difficult to secure such a wholesome respect for the law as will insure a willing obedience and universal observance by every citizen and subject, where the one declares lawful that which the other says may be a felony. I think it must be conceded that any system of laws which can give rise to a condition of this kind violates the spirit of fundamental justice.

But it is the function of courts to give judgment upon the law as it is, and not according to what the court may think it should be, and if it be a court of intermediate jurisdiction, as it would appear to be in the instant case, it can only follow the authority of the superior tribunal. For this reason, and without any want of appreciation for the learned discussion of these questions presented by counsel, with much of which the writer hereof agrees, I conclude that this court is bound to affirm the judgment of the court below, unless appellant's second contention can be upheld, which is that the adoption of the amendment to the state constitution, known as sec. 26 of art. 3, being after the enactment of C. S., sec. 2606, repeals the same by implication. It reads: "From and after the first day of May in the year 1917, the manufacture, sale, keeping for sale and transportation for sale of intoxicating liquors for beverage purposes are forever prohibited. The legislature shall enforce this section by all needful legislation."

For the reasons pointed out in the decision, this contention does not seem tenable, particularly in view of the rule of construction universally applied to state constitutions, that they are a limitation and not a grant of power. Furthermore, this interpretation of the meaning and purpose of this amendment is contrary to the construction which has quite generally been given to it since its adoption, and is clearly against the weight of authority.

In this connection, I desire to say that the strictures contained in the closing paragraph of counsel's brief and application for a rehearing, designated as "conclusion," are neither argumentative nor respectful, and should be stricken therefrom. The objectionable matter in respondent's brief, referred to in the petition for rehearing, was withdrawn upon the oral argument, in such a way as left nothing further to be said.

Budge, C. J., and McCarthy, Dunn and Wm. E. Lee, JJ., concur in the conclusion that a rehearing should be denied, and in striking from the record that portion of appellant's petition and brief on rehearing designated as "conclusion." It is so ordered.